Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| JULIO E. VÁZQUEZ SUÁREZ  Recurrente  v.  BELLA INTERNATIONAL, LLC; FIRSTBANK DE PUERTO RICO  Recurrida | KLRA202500314 | *Revisión* procedente del Departamento de Asuntos del Consumidor  Caso Núm.: SAN-2023-0016972  Sobre: Vehículo de Motor |
|---|---|---|

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de junio 2025.

Comparece Julio E. Vázquez Suárez (en adelante, recurrente) mediante un *Recurso de Revisión,* para solicitarnos la revisión de la *Resolución* emitida y notificada el 28 de marzo de 2025, por el Departamento de Asuntos del Consumidor (en adelante, DACo).[1] Mediante la *Resolución* recurrida, el DACo declaró *No Ha Lugar* la querella incoada por el recurrente, por lo que ordenó su cierre y archivo.

Por los fundamentos que expondremos, se *confirma* la *Resolución* recurrida.

I

El caso del título inició cuando, el 23 de octubre de 2023, el DACo notificó una *Querella* incoada por el recurrente contra Bella Group, LLC d/b/a Honda de San Juan (en adelante, Bella o parte recurrida).[2] En la *Querella,* el recurrente adujo haber adquirido un vehículo Honda Pilot (vehículo) en el concesionario de Bella. Esbozó

---

[1] Apéndice 3 del recurso, a las págs. 22-33.
[2] Apéndice 24 del recurso, a las págs. 152-156.

Número Identificador

SEN2025_____

que, a partir de la adquisición, en diciembre de 2020, cuando tenía 2,668 millas recorridas, lo llevó por primera vez al concesionario por problemas en el sistema de sonido. Arguyó que, luego de esa ocasión, lo llevó en enero de 2021, agosto de 2021, dos (2) ocasiones en octubre de 2021, dos (2) ocasiones en noviembre de 2021, una en agosto de 2022, dos (2) ocasiones en diciembre de 2022, dos (2) ocasiones en febrero de 2022 y una en julio de 2024 por las mismas fallas, similares y/o de seguimiento a las mismas. Acotó haberle dado la oportunidad a Bella para solucionar el problema, pero que las fallas del vehículo eran suficientes para determinar que el mismo era inservible para los fines que fue adquirido, puesto a que había defectos en los accesorios que limitaban la conducción apropiada del mismo y atentaban contra la seguridad del conductor. Puntualizó que, en esos momentos y desde el 24 de julio de 2023, el vehículo se encontraba en el centro de servicio de Bella en espera de una pieza que presuntamente solucionaría el problema. Indicó que la pieza tenía una fecha aproximada de entrega para el mes de marzo de 2024. Expresó, además, que le solicitó alternativas al concesionario para su transportación en lo que se recibía la pieza, pero solo se le aprobó con tiempo limitado, por lo que se encontraba sin transporte y la alternativa ofrecida por Bella fue esperar por la pieza.

A tenor, con lo antes expuesto, el recurrente solicitó que: (i) se dejara sin efecto el contrato de compraventa del vehículo; (ii) se le devolviera la totalidad del dinero pagado con intereses; (iii) se le devolviera la cantidad pagada en el último mantenimiento, y (iv) se le proveyera transportación, mientras se solucionaba la situación, que igualara la calidad del vehículo que se representó en el momento en que fue adquirido.

En reacción, el 3 de noviembre de 2023, Bella interpuso una *Contestación a querella.*[3] En síntesis, negó las alegaciones por falta de información y/o creencia suficiente como para formular la misma, por lo que esbozó estaba realizando un proceso de investigación de las alegaciones, lo cual no había concluido. Por otro lado, presentó sus defensas afirmativas y solicitó se declarara no ha lugar la querella.

Luego, el 3 de noviembre de 2023, Bella interpuso una *Moción asumiendo representación legal, solicitud bajo la Regla 7 del Reglamento de Procedimiento Adjudicativo del DACo, inspección y solicitando copia de documentos sometidos al expediente administrativo.*[4] En la misma, esencialmente solicitó que el recurrente le proveyera, con antelación a la vista administrativa, toda la documentación que fuese a presentar en evidencia, así como la que ya hubiese presentado ante el DACo. Por otra parte, peticionó que se le realizara al vehículo en cuestión una inspección por un perito imparcial y conforme a la reglamentación aplicable.

Así las cosas, el 2 de febrero de 2024, se emitió la *Notificación de informe de inspección.*[5] Mediante la referida inspección se determinó que las condiciones del vehículo, según las alegaciones de la querella, eran las siguientes:

- El vehículo se encuentra con marbete vencido desde septiembre de 2023.

- La pantalla digital del radio y que comprende otros sistemas informativos y/o de referencias no enciende.

- El diagnóstico para el equipo señalado que no enciende, se realiza en el mismo equipo por tal razón no se pudo realizar el diagnóstico de fallas al momento de realizada esta inspección.

- Todo el dash board del vehículo y sus componentes están instalados en su posición.

---

[3] Apéndice 23 del recurso, a las págs. 147-151.
[4] Apéndice 22 del recurso, a las págs. 143-146.
[5] Apéndice 21 del recurso, a las págs. 138-142.

Establecido lo anterior, el perito recomendó que se remplazara el equipo defectuoso para que el equipo encienda y que se corrigieran los equipos o conexiones necesarias para su debido funcionamiento. En sus observaciones, el referido perito señaló que la parte recurrida le indicó que no era necesario proveerle otro vehículo al recurrente puesto a que este era funcional y lo podía seguir utilizando hasta que llegara la pieza.

Tras varias incidencias procesales, el 11 de abril de 2024, Bella presentó una *Moción informativa, solicitud para incluir parte indispensable, solicitud de orden para permitir reparación pendiente, y solicitud de reinspección concluida la reparación.*[6] Entre otras cosas, indicó que el responsable de proveer las piezas y los componentes para reparar la pantalla digital del vehículo era American Honda, por lo que esta era una parte indispensable en el presente pleito. Así, pues, solicitó que se incluyera como parte querellada. Por otra parte, peticionó al DACo que emitiera una orden requiriéndole al recurrente la oportunidad de reparar los desperfectos habidos en el vehículo, y que, una vez concluida la reparación, se efectuará una reinspección del mismo.

En reacción, el 26 de abril de 2025, el recurrente interpuso una *Moción informativa, en solicitud de término y en oposición.*[7] En la misma, se allanó a la solicitud de parte indispensable. No obstante, se opuso a la petición de la orden a los efectos de que se reparara y se reinspeccionara el vehículo. Puntualizó que había acudido al concesionario de Bella en trece (13) ocasiones para reparar al vehículo objeto de reclamación y que este había estado fuera de servicio por alrededor de doscientos veintisiete (227) días, por lo que, a su entender, era razonable oponerse a la orden solicitada.

---

[6] Apéndice 18 del recurso, a las págs. 126-130.
[7] Apéndice 17 del recurso, a las págs. 119-121.

Evaluado lo anterior, el 30 de abril de 2024, el DACo emitió y notificó una *Orden*.[8] Mediante la misma, declaró *No Ha Lugar* la solicitud de Bella del 11 de abril de 2024. Por otro lado, ordenó al recurrente a enmendar su querella, para incluir como parte querellada a FirstBank.

En virtud de la antedicha *Orden*, el 13 de mayo de 2024, el recurrente incoó una *Enmienda a querella*.[9] Mediante la referida enmienda, incluyó a FirstBank como parte coquerellada, por haber sido quien financió la compraventa del vehículo mediante un contrato de arrendamiento financiero. No obstante, el recurrente incorporó por referencia todos los hechos y alegaciones incluidos en el escrito de querella original.

En reacción, el 14 de junio de 2024, Bella presentó *su Contestación a la querella y/o querella enmendada*.[10] Al igual que en su contestación a la querella original, negó todas las alegaciones por falta de información y/o creencia suficiente como para formular una respuesta, presentó sus defensas afirmativas y peticionó se declarará no ha lugar la querella.

Subsiguiente, el 14 de junio de 2024, ocurrieron cuatro (4) eventos procesales. El *primero* fue que compareció Firstbank Puerto Rico (en adelante, Firstbank) mediante escrito para asumir la representación legal.[11] El *segundo* evento fue que Firstbank instó una *Solicitud de producción de documentos bajo la Regla 7.1(f)*.[12] El *tercer* evento fue que Firstbank presentó una *Solicitud de desestimación*.[13] Adujó que la querella dejaba de exponer reclamaciones en su contra que justificaran un remedio a favor del recurrente. El *cuarto* y último evento de la antedicha fecha fue que

---

[8] Apéndice 15 del recurso, a las págs. 114-117.
[9] Apéndice 14 del recurso, a las págs. 74-93.
[10] Apéndice 12 del recurso, a las págs. 65-70.
[11] Apéndice 11, a las págs. 60-64.
[12] Apéndice 10 del recurso, a las págs. 43-45 y 58-59.
[13] *Íd.*, a las págs. 43-45 y 51-57.

*Firstbank interpuso su Contestación a querella.*[14] En suma, negó todos los hechos alegados en la *Querella* por falta de información y creencia. De otra parte, en sus defensas afirmativas, esencialmente, arguyó que no podía responder por los daños alegados por el recurrente.

Luego de varios incidentes innecesarios pormenorizar, el 11 de marzo de 2025, se celebró la vista administrativa. Las partes comparecieron por sí y representadas por abogado. El recurrente compareció acompañado por su esposa y testigo de parte, la señora María del Carmen Rodríguez Mercado, mientras que, como testigo de Bella, compareció el señor Marcos Marrero, inspector de garantía de Bella.

Producto de la vista celebrada, el 28 de marzo de 2025, el DACo emitió y notificó la *Resolución* objeto de este recurso.[15] Mediante la *Resolución* recurrida, el DACo declaró *No Ha Lugar* la querella y ordenó su cierre y archivo.

Como parte del dictamen emitido, el DACo consignó las siguientes veinticuatro (24) determinaciones de hechos:

1. El 18 de septiembre de 2020, la parte querellante adquirió en Bella el vehículo de motor nuevo objeto de la presente querella. El vehículo es marca Honda, modelo Pilot Elite, del año 2020, tablilla JMW667, número de serie 5FNYF6H03LB001920.

2. El querellante financió la compraventa mediante un contrato de arrendamiento financiero con FirstBank Puerto Rico. El precio del vehículo fue $60,948.00.

3. El vehículo se vendió con una garantía básica de fábrica de tres (3) años o 36,000 millas, lo que ocurra primero.

4. El titular del vehículo es el querellante, Julio E. Vázquez; quien utiliza el mismo es la esposa y testigo en este caso, María del Carmen Rodríguez Maldonado.

5. El 29 de diciembre de 2020, la esposa del querellante llevó el vehículo Honda Pilot, a Bella para servicio e indicó las siguientes condiciones: el radio no prende, unidad tenía sonido en el área de las bocinas similar a "tac". Además, realizaron mantenimiento e inspección de 20 puntos. Bella

---

[14]Apéndice 10 del recurso, a las págs. 43-45 y 46-50.
[15] Apéndice 3 del recurso, a las págs. 22-33.

realizó el boletín 20-058, que consistía en instalar los conectores FRAKA y los Cords de servicio Most, según lo indicaba el boletín. En este servicio, se corrigieron las condiciones del vehículo reclamadas por la parte querellante. El millaje del vehículo era de 2,668 millas. Al querellante le entregaron el vehículo el mismo día.

6. El 7 de enero de 2021, la parte querellante llevó su vehículo a Bella para, entre otras cosas, verificara el puerto del cable HMI en la parte de atrás ya que no funcionaba. Bella determinó que le faltaba al "adapter" HDMI, el cable de corriente y lo instalaron. El millaje del vehículo era de 3,097 millas. Le entregaron el vehículo a la parte querellante el 12 de enero de 2021.

7. El 3 de agosto de 2021, la parte querellante llevó su vehículo a Bella e indicó que el radio se apagaba solo y el "display" se ponía negro. Realizaron la reparación del vehículo cambiando el "Infotainment". El millaje del vehículo era de 10,558 millas. Le entregaron el vehículo a la parte querellante el mismo día.

8. El 16 de octubre de 2021, la parte querellante llevó su vehículo a Bella y les indicó que el radio se apagaba solo y que el "display" se ponía negro. Bella verificó el "Infotainment" y encontraron fallas y deterioro. Bella reemplazó el "lnfotainment". El millaje del vehículo era de 13,171 millas. Le entregaron el vehículo a la parte querellante el 19 de octubre de 2021.

9. El 26 de octubre de 2021, la parte querellante llevó su vehículo a Bella y les reclamó que la unidad tenía un sonido como de estática en el sistema de audio. Bella encontró fallas referentes al "meter" y encontraron que la cablería estaba mal instalada. Bella corrigió la condición reacomodando la cablería. El millaje del vehículo era de 13,558 millas. Le entregaron el vehículo a la parte querellante el mismo día.

10. El 8 de noviembre de 2021, la parte querellante llevó su vehículo a Bella para una cita con el inspector de garantía del centro de servicio Honda y verificaron el "Most bus network connectors we" y la alegación de que tenía un sonido como de estática en el sistema de audio. Bella solicitó al fabricante aprobación para cambiar el "amplifier". Aprobaron el cambio, pero la pieza la ordenaron porque no estaba disponible. El millaje del vehículo era de 14,028 millas. Le entregaron el vehículo a la parte querellante el mismo día. El 17 de noviembre de 2021, Bella realizó el reemplazo del amplificador y se corrigió la condición.

11. El 14 de diciembre de 2022, la parte querellante llevó su vehículo de motor a Bella y les indicó que el radio se dejaba de escuchar y tenía un sonido de estática. Solicitaron autorización al fabricante para realizar el cambio del amplificador. El millaje del vehículo era de 29,347 millas. Le entregaron el vehículo a la parte querellante el mismo día.

12. El 27 de diciembre de 2022, la parte querellante llevó su vehículo de motor a Bella y le instalaron el amplificador. Se corrigió la condición. El millaje del vehículo era de 29,846 millas. Le entregaron el vehículo a la parte querellante el mismo día.

13. El 2 de febrero de 2023, el querellante llevó su vehículo a Bella y le indicó que el auto continuaba con el sonido de estática en el radio. El diagnóstico fue que había que reemplazar el "meter combination"; solicitaron autorización al fabricante. El millaje del vehículo era de 31,256 millas. Le entregaron el vehículo a la parte querellante el mismo día.

14. El 13 de febrero de 2023, el querellante llevó su vehículo a Bella y reemplazaron el "meter combination" y se corrigió la condición. El millaje del vehículo era de 31,760 millas. Le entregaron el vehículo a la parte querellante el mismo día.

15. El 24 de julio de 2023, el querellante llevó su vehículo a Bella (el millaje del vehículo era de 37,233 millas) para servicio y le informaron que el vehículo tenía un "recall"-"Passport/Pilot Install Fakra Service Cables at Most Bus Network". Se verificó auto y se encontró que sonido proviene de sistema de audio, se verificó en "Interactive" y se encontró "Service Bulletin 23-047". Indicaron que la condición es causada por la pérdida de la conección en sistema. La recomendación fue la instalación de "Fakra Connector" en cablería de "Most". Se realizó servicio de reparación de empalme de cables y se instalaron los "clips" de uniones de "Most" de Radio y se realizó la instalación de "Most Service Cords" en "Gauge Control Module".

    Cuando realizaron la reparación del "Recall", se encontró el conector verde de "Infotainment Unit" con cableado parcialmente desprendido del terminal, ocasionando conexión intermitente y faltas en el sistema de "Most Network". Para corregir la condición requiere el reemplazo de la pieza "Dash Harness". Bella ordenó la pieza porque no estaba disponible.

16. El vehículo de motor de la parte querellante se podía utilizar mientras llegaba la pieza. Esta pieza no impedía el uso del vehículo. Sin embargo, la parte querellante decidió dejarlo en Bella mientras llegaba la pieza.

17. El 12 de febrero de 2024, la parte querellante recogió su vehículo en Bella, ya que la pieza no había llegado.

18. El 18 de marzo de 2024, Bella recibió la pieza "Dash Harness" y le notificó a la parte querellante que la pieza había llegado. La parte querellante decidió que no llevaría la unidad para que le instalaran la pieza.

19. La pieza "Dash Harness" y su instalación serian libre de costo para el querellante, ya que así lo había autorizado el fabricante.

20. La pieza "Dash Harness" es un cable principal que transmite las imágenes, el sonido y media.

21. Todas las reparaciones relacionadas con el sistema de la pantalla digital se realizaron en garantía. La pantalla digital es un accesorio utilizado para la cámara de reversa, el radio, otros equipos y servicios.

22. La cámara digital no impide el uso del vehículo. La parte querellante utilizó el vehículo de forma normal, el problema de la pantalla no mermó el uso del vehículo de motor. Esto

lo demostró el millaje del vehículo en cada una de las hojas de servicio que fueron estipuladas por las partes.

23. La parte querellante llevó en otras ocasiones su vehículo a Bella para mantenimiento y asuntos relacionados con las gomas.

24. El 18 de septiembre de 2023, la parte querellante presentó la querella de epígrafe en el DACO y se notificó el 23 de octubre de 2023. El 13 de mayo de 2024, la parte querellante enmendó la querella. En ambas se solicitó la resolución del contrato.[16]

En su *Resolución*, el DACo concluyó que no hubo dolo por parte de Bella.[17] Por otro lado, concluyó que la prueba demostró que el recurrente utilizó el vehículo de forma regular y que los problemas no mermaron el uso de la unidad. De igual forma concluyó que la parte recurrida cumplió con el contrato de garantía. Razonó, además, que el recurrente debió haber llevado su auto para que le instalaran la pieza que corregía el problema según establecía el "recall" y que, al no hacerlo, no le brindó la oportunidad a la parte recurrida para corregir el problema de forma efectiva.

A tenor, juzgó que no era posible acceder a lo solicitado por el recurrente, sobre declarar la recisión de los contratos de compraventa y arrendamiento financiero del vehículo, así como otorgarle daños y honorarios de abogado, ya que la parte recurrida no actuó con temeridad. En fin, concluyó que el recurrente no demostró que el vehículo objeto del presente caso tuviese un defecto de fábrica que mermara notablemente el uso, el valor o la seguridad de éste. De igual forma, puntualizó que aún si lo hubiese tenido o lo tuviese, el recurrente no pudo o no quiso repararlo.

En desacuerdo, el 16 de abril de 2024, el recurrente incoó una *Moción en solicitud de reconsideración*.[18] En reacción, el 23 de abril

---

[16] Apéndice 3 del recurso, a las págs. 22-25.
[17] *Íd.*, a la pág. 28.
[18] Apéndice 2 del recurso, a las págs. 8-21.

de 2025, Bella presentó su *Oposición a solicitud de reconsideración.*[19]

Inconforme, y luego de que el DACo no actuó en torno pedimiento del recurrente, el 29 de mayo de 2025, este compareció mediante un *Recurso de revisión* en el cual alzó los siguientes diez (10) señalamientos de error:

> PRIMER ERROR: ERRÓ EL DACO AL NO DECRETAR LA NULIDAD DEL CONTRATO DE COMPRAVENTA DEL VEHÍCULO DE MOTOR ANTE LOS PROBLEMAS MECÁNICOS PERSISTENTES SIN QUE EL VENDEDOR PUDIESE ARREGLAR LOS MISMOS.

> SEGUNDO ERROR: ERRÓ EL DACO EN LA INTERPRETACIÓN QUE HACE SOBRE OPORTUNIDAD RAZONABLE PARA REPARAR.

> TERCER ERROR: ERRÓ EL DACO AL NO CONSIDERAR LA INTERRUPCIÓN DEL TÉRMINO POR TODAS LAS GESTIONES DE REPARACIÓN.

> CUARTO ERROR: ERRÓ EL DACO AL IGNORAR LA PÉRDIDA DE CONFIANZA DEL CONSUMIDOR SOBRE SU VEHÍCULO Y EL VENDEDOR ANTE LA INCAPACIDAD DE REPARAR EL MISMO EN GARANTÍA.

> QUINTO ERROR: ERRÓ EL DACO EN LA APLICACIÓN INCORRECTA DE LA REGLA 22 DLE REGLAMENTO 7159.

> SEXTO ERROR: ERRÓ EL DACO AL NO RECONOCER LA REGLA 37 DEL REGLAMENTO NÚM. 7159 SOBRE RE[S]ERVA DE DERECHOS.

> SÉPTIMO ERROR: ERRÓ EL DACTO AL NO INTERPRETAR ADECUADAMENTE EL ARTÍCULO 1373 DEL CÓDIGO CIVIL DE SANEAMIENTO DE VIVIOS OCULTOS.

> OCTAVO ERROR: ERRÓ EL DACO AL NO INTEPRETAR ADECUADAMENTE LA ACCIÓN REDHIBITORIA AL CASO SOBRE RESOLUCIÓN DE CONTRATO.

> NOVENO ERROR: ERRÓ EL DACO AL NO CONSIDERAR EL POTENCIAL DE NULIDAD DEL CONTRATO DE COMPRAVENTA POR DOLO.

> DÉCIMO ERROR: ERRÓ EL DACO AL VALORAR DE (SIC) LA PRUEBA PRESENTADA DE MANERA INADECUADA Y LA FALTA DE MOTIVO SUFICIENTE EN LA RESOLUCIÓN.

Mediante *Resolución* del 2 de junio de 2025, concedimos a la parte recurrente hasta el 6 de junio de 2025, para acreditar el cumplimiento con la Regla 58 del Reglamento de este Tribunal.[20]

---

[19] Apéndice 2 del recurso, a las págs. 1-7.
[20] 4 LPRA Ap. XXII-B, R. 58.

Por otro lado, concedimos hasta esa misma fecha al Departamento de Asuntos del Consumidor (DACo) para presentar copia certificada del expediente administrativo objeto de este recurso. Además, concedimos a la parte recurrida hasta el 26 de junio de 2025, para presentar su alegato en oposición al recurso.

El 6 de junio de 2025, compareció el DACo para cumplir con nuestra *Resolución* del 2 de junio de 2025, sobre presentar el expediente administrativo certificado.

Por otro lado, habiendo decursado el término concedido a la parte recurrente para cumplir con nuestra *Resolución* del 6 de junio de 2025, emitimos una *Resolución* en la cual concedimos un término perentorio para cumplir con la misma hasta el 13 de junio de 2025, a las 3:00 pm y se le advirtió que de no cumplir se desestimaría el recurso incoado.

El 13 de junio de 2025, compareció la parte recurrente mediante *Moción en cumplimiento de orden* para acreditar el cumplimiento con nuestras *Resoluciones* del 2 y 10 de junio de 2025. Por su parte, el 26 de junio de 2025, compareció la parte recurrida mediante escrito intitulado *Alegato de Bella International, LLC en oposición a recurso de revisión administrativa*. Con el beneficio de la comparecencia de las partes, procederemos a disponer del presente recurso.

II

### A. Revisión Judicial

El Tribunal Supremo de Puerto Rico ha sostenido que el derecho a cuestionar la determinación de una agencia, mediante revisión judicial, es parte del debido proceso de ley protegido por la Constitución de Puerto Rico.[21] El Artículo 4.006 (c) de la Ley de la

---

[21] *Asoc. Condómines v. Meadow Dev.*, 190DPR 843, 847 (2014); *Picorelli López v. Depto. de Hacienda*, 179 DPR 720, 736 (2010).

Judicatura del Estado Libre Asociado de Puerto Rico[22] otorga competencia apelativa al Tribunal de Apelaciones para revisar las decisiones, órdenes y resoluciones finales de las agencias administrativas.[23] La revisión judicial de las decisiones administrativas tiene como fin delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus funciones conforme a la ley y de forma razonable.[24] Esta doctrina dispone que corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron tomadas dentro de los poderes delegados, y si son compatibles con la política pública que las origina.[25]

A esos efectos, la revisión judicial comprende tres (3) aspectos: (i) la concesión del remedio apropiado; (ii) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial, y (iii) la revisión completa y absoluta de las conclusiones de derecho.[26] Nuestro Alto Foro ha establecido que el derecho a una notificación adecuada concede a las partes la oportunidad de tomar conocimiento real de la acción tomada por la agencia. Además, otorga a las personas, cuyos derechos pudieran quedar afectados, la oportunidad para decidir si ejercen los remedios que la ley les reserva para impugnar la determinación.[27]

Es norma sabida que los tribunales apelativos, al ejercer su función revisora, deben conceder una gran deferencia a las decisiones emitidas por las agencias, debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados.[28] Igualmente, el Alto Foro ha enfatizado que los

---

[22] Ley Núm. 201-2003, 4 LPRA sec. 24y(c).

[23] *Asoc. Condómines v. Meadows Dev.,* supra, a la pág. 847.

[24] *Empresas Ferrer v. ARPe,* 172 DPR 254, 264 (2007).

[25] *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35 (2018).

[26] *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 217 (2012), citando a *Asoc. Fcias. V. Caribe Specailty et al. II,* 179 DPR 923, 940 (2010); *Mun. de San Juan v. JCA*, 149 DPR 263, 279-280 (1999).

[27] *Asoc. Vec. Altamesa Este v. Mun. de San Juan,* 140 DPR 24, 34 (1996).

[28] *Rolón Martínez v. Supte. Policía,* supra, a la pág. 35.

tribunales, aplicando el criterio de razonabilidad y deferencia, no deben alterar las determinaciones de las agencias.[29] En mérito de lo anterior, los tribunales deben ser cautelosos al intervenir con las conclusiones e interpretaciones de los organismos administrativos especializados.[30] Ahora bien, lo anterior únicamente surtirá efecto si la decisión se basa en evidencia sustancial que obra en el expediente administrativo.[31] En cuanto a la evidencia sustancial, se ha definido como "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[32] Dicho análisis requiere que la evidencia sea considerada en su totalidad, esto es, tanto aquella que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido.[33] Ello, implica que, de existir un conflicto razonable en la prueba, debe respetarse la apreciación de la agencia.[34] Además, la norma de prueba sustancial se sostiene en la premisa de que son las agencias las que producen y determinan los hechos en los procesos administrativos, y no los tribunales.[35]

Debido a la presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, quien alegue ausencia de evidencia sustancial tendrá que presentar prueba suficiente para derrotar esta presunción, no pudiendo descansar en meras alegaciones.[36] Para ello, deberá demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de

---

[29] *Rolón Martínez v. Supte. Policía,* supra, a la pág. 35.

[30] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).

[31] *Otero v. Toyota*, 163 DPR 716, 727 (2005).

[32] *Batista, Nobbe v. Jta. Directores,* supra, a la pág. 216; *Otero v. Toyota*, supra, a la pág. 728.

[33] *Assoc. Ins. Agencies, Inc. v. Com. Seg. PR*, 144 DPR 425, 437 (1997).

[34] *Hilton v. Junta de Salario Mínimo*, 74 DPR 670, 687 (1953).

[35] Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, Ed. Forum, 2013.

[36] *OEG v. Martínez Giraud*, 210 DPR 79, 89 (2022); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 128 (2019); *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013); *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).

acuerdo con la totalidad de la prueba que tuvo ante su consideración.[37] Si la parte afectada no demuestra la existencia de otra prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial o que reduzca o menoscabe el valor de la evidencia impugnada, el Tribunal respetará las determinaciones de hecho, y no sustituirá el criterio de la agencia por el suyo.[38] En cambio, las conclusiones de derecho son revisables en todos sus aspectos.[39] Lo anterior fue reiterado por nuestro Tribunal Supremo cuando expresó que "al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos."[40] En esta tarea, los tribunales están compelidos a considerar la especialización y la experiencia de la agencia con respecto a las leyes y reglamentos que administra.[41] Así pues, si el fundamento de derecho no conlleva interpretación dentro del marco de la especialidad de la agencia, entonces el mismo es revisable en toda su extensión.[42]

Sin embargo, aun cuando el Tribunal tiene facultad para revisar en todos sus aspectos las conclusiones de derecho de una agencia, se ha establecido que ello no implica que los tribunales revisores tienen la libertad absoluta para descartarlas libremente.[43] Si del análisis realizado se desprende que la interpretación que hace una agencia de su reglamento o de la ley que viene llamada a poner en vigor resulta razonable, el Tribunal debe abstenerse de intervenir.[44] Ahora bien, la deferencia reconocida a las decisiones de las agencias administrativas cede en algunas situaciones: (i) cuando

---

[37] *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 244 (2007).
[38] *Otero v. Toyota*, supra, a la pág. 728.
[39] *García Reyes v. Cruz Auto Corp.*, supra, a la pág. 894.
[40] *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros*, 2025 TSPR 56, 215 DPR ___ (2025).
[41] *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75-76 (2000).
[42] *Rivera v. A & C Development Corp.*, 144 DPR 450, 461 (1997).
[43] *Federation Des Ind. v. Ebel*, 172 DPR 615, 648 (2007); *López Borges v. Adm. Corrección*, 185 DPR 603, 626 (2012).
[44] *Cruz v. Administración*, 164 DPR 341, 357 (2005).

la decisión no esté basada en evidencia sustancial; (ii) cuando la agencia haya errado en la aplicación de la ley; (iii) cuando su actuación resulte ser arbitraria, irrazonable o ilegal; y, (iv) cuando la actuación administrativa lesiona derechos constitucionales fundamentales.[45] Entiéndase que, aunque los tribunales están llamados a conceder deferencia a las decisiones administrativas, tal norma no es absoluta. Ello, puesto a que no puede imprimírsele un sello de corrección automático, bajo el pretexto de deferencia, a determinaciones o interpretaciones administrativas que son irrazonables, ilegales o contrarias a derecho.[46]

### B. Reglamento de Garantías de Vehículo de Motor

El Reglamento de Garantías de Vehículos de Motor (Reglamento Núm. 7159),[47] tiene como finalidad ser un mecanismo para: (i) proteger adecuadamente a los consumidores de Puerto Rico en la adquisición de vehículos de motor; (ii) asegurarles que su vehículo sirvan los propósitos para el cual fue adquirido, y que reúna las condiciones necesarias para garantizar al comprador la protección de su vida y propiedad, y, (iii) prevenir las prácticas ilícitas en las ventas de vehículos de motor.[48] Es al amparo de los enumerados objetivos que el DACo, al promulgar el aludido reglamento, esgrimió normas para garantizar la seguridad, salud y bienestar de los adquirientes de automóviles nuevos. A tales efectos, el Reglamento Núm. 7159, en su Regla 22, dispone que el DACo:

> [P]odrá, a opción el comprador, decretar la resolución del contrato o reducir proporcionalmente el precio de venta de acuerdo con el código Civil de Puerto Rico, en aquellos casos en que el vendedor, distribuidor autorizado o concesionario, distribuidor de fábrica o fabricante, dentro de los términos de la garantía de fábrica, tuvo oportunidad razonable para reparar uno o más defectos, pero no quiso o no pudo corregirlos.[49]

---

[45] *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 822 (2012), citando a *Empresas Ferrer v. ARPe*, supra.

[46] *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 213 DPR 743 (2024).

[47] Reglamento de Garantías de Vehículos de Motor, Reglamento Núm. 7159 del 1 de junio de 2006.

[48] *Ortiz Rolón v. Soler Auto Sales et al.*, 202 DPR 689, 697 (2019); *Polanco v. Cacique Motors*, 165 DPR 156, 163-164 (2005).

[49] Regla 22 del Reglamento Núm. 7159, *supra.*

Sobre lo que constituye oportunidad razonable, para propósitos de la antedicha disposición, se determinará tomando en consideración las circunstancias particulares de cada caso.[50]

Asimismo, en cuanto a los vehículos usados, la Regla 29.3 del aludido Reglamento contiene disposiciones similares a la antedicha Regla 22, y establece que el DACo:

> [P]odrá, a opción del consumidor, decretar la resolución del contrato o reducir proporcionalmente su precio de venta de acuerdo a las disposiciones del Código Civil de Puerto Rico en aquellos casos en que el vendedor o su representante, dentro de los términos de la garantía, tuvo oportunidad razonable para reparar uno o más defectos, pero no quiso o no pudo corregirlos. Lo que constituye oportunidad razonable de reparar se determinará tomando en consideración las circunstancias particulares de cada caso.[51]

Ahora bien, la Regla 37, establece que nada de lo dispuesto en el Reglamento Núm. 7159 limitará en forma alguna el derecho del consumidor a ejercer cualquier acción que le reconozca el ordenamiento jurídico, así como las acciones de saneamiento por evicción, vicios ocultos o redhibitoria y cualesquiera otras que reconozca el Código Civil de Puerto Rico.[52] Siendo así, "las determinaciones del DACo relacionadas a estos asuntos deben ser cónsonas con los artículos del Código Civil sobre las acciones de saneamiento en la compraventa".[53]

### C. El Saneamiento de la Cosa Vendida

Como es sabido, nuestro Código Civil establece que todo vendedor está obligado a la entrega y al saneamiento de la cosa vendida.[54] Este deber de saneamiento, que complementa el deber de la entrega, garantiza al comprador que el vendedor responderá de la posesión legal y pacífica de la cosa comprada y de los vicios ocultos

---

[50] Regla 22 del Reglamento Núm. 7159, *supra.*
[51] *Íd.*, Regla 29.
[52] *Íd.*, Regla 37.
[53] *Polanco v. Cacique Motors*, supra, a la pág. 165.
[54] Artículo 1350 del Código Civil de Puerto Rico de 1930 (Código Civil de 1930), 31 LPRA sec. 3801 (derogado). El derecho aplicable en el caso de autos se remite al Código Civil de 1930, toda vez que nos encontramos ante hechos ocurridos con anterioridad a la aprobación y vigencia del Código Civil de Puerto Rico de 2020, Ley Núm. 55-2020, 31 LPRA sec. 5311 *et seq.*

que tuviere.[55] Este deber de garantía se conoce como saneamiento por evicción o saneamiento por vicios ocultos.[56] Particularmente, este último, contempla situaciones en las que, posterior a la entrega, se evidencian en la cosa comprada defectos intrínsecos que exceden las imperfecciones menores que se esperan normalmente en un producto determinado.[57]

Ahora bien, para que proceda la acción de saneamiento por vicios ocultos, se requiere que coincidan los siguientes requisitos: (1) que la cosa adolezca de un vicio oculto, que no sea conocido por el adquirente al momento de la compra; (2) que el vicio sea de tal gravedad que haga la cosa impropia para el uso a la que se destina o disminuya notablemente su valor de manera que el comprador no habría adquirido la cosa de haberlo conocido; (3) el defecto debe ser preexistente a la venta; y (4) la acción debe ejercitarse dentro del plazo legal de seis (6) meses contados desde la entrega de la cosa conocida.[58] En cuanto aludido plazo legal, este comenzará a transcurrir desde el momento en que cesen las gestiones de inteligencia entre las partes.[59] Por otro lado, cabe resaltar que el defecto necesario para activar la acción redhibitoria es aquel que merme notablemente el valor de cosa, por lo que no se requerirá que el vicio imposibilite el uso de la cosa.[60]

Es preciso señalar que, en estos casos, el comprador puede optar entre desistir del contrato o solicitar que se reduzca el precio a una cantidad proporcional.[61] En adición, en aquellos casos en los

---

[55] Artículo 1363 del Código Civil de 1930, *supra*, 31 LPRA. 3831 (derogado).
[56] *Polanco v. Cacique Motors*, supra, a las págs. 165-166; *Ferrer Delgado v. General Motors Corp.,* 100 DPR 246, 251 (1971).
[57] *Polanco v. Cacique Motors,* supra, a la pág. 166; *Ferrer Delgado v. General Motors Corp.,* supra, a la pág. 251.
[58] Artículos 1373 y 1379 del Código Civil de 1930, *supra*, 31 LPRA secs. 3841 y 3847 (derogados); *Polanco v. Cacique Motors*, supra, a la pág. 166; *Ferrer Delgado v. General Motors Corp.,* supra, a la pág. 251.
[59] *Polanco v. Cacique Motors*, supra, a la pág. 166; *Ferrer Delgado v. General Motors Corp.,* supra, a la pág. 252; *Casa Jaime Corp. v. Castro,* 89 DPR 702, 704 (1963).
[60] *Polanco v. Cacique Motors,* supra, a la pág. 167; *DACo v. Marcelino Mercury*, 105 DPR 80, 84 (1976).
[61] Artículo 1375 del Código de 1930, *supra*, 31 LPRA sec. 3843 (derogado).

cuales el vendedor conocía del defecto y no lo comunicó, el comprador tendrá derecho a exigir daños y perjuicios.[62]

En lo pertinente al caso marras, es menester acentuar que nuestro Tribunal Supremo ha tenido la oportunidad de expresarse en cuanto a las acciones por vicios ocultos cuando el objeto de compraventa es un vehículo de motor.[63] Conforme ha razonado nuestro Más Alto Foro judicial, el primer paso consiste en determinar si los defectos de que adolece el automóvil constituyen un vicio oculto, sea redhibitorio o cuantiminoso.[64] En adición, el comprador vendrá obligado a demostrar que, al momento de la compraventa, el automóvil funcionaba debidamente, y que el vendedor no quiso o no pudo corregir el defecto, a pesar de haber tenido la oportunidad de hacerlo.[65] Por su parte, el demandado solo queda exento de responsabilidad si, como defensa afirmativa, demuestra que el funcionamiento anormal es causado por los actos del comprador.[66]

### D. El Dolo Contractual

Conforme al Artículo 1213 del Código Civil de 1930, hoy derogado, para que exista un contrato deben concurrir los requisitos siguientes: (i) consentimiento entre los contratantes; (ii) objeto cierto que sea material del contrato, y (iii) causa de la obligación que se establezca.[67] Ahora bien, si el consentimiento fue prestado por error, violencia, intimidación o **dolo** el contrato será nulo.[68] Habrá dolo cuando con palabras o maquinaciones insidiosas uno de los contratantes induce al otro a celebrar un contrato que, sin ellas, no

---

[62] Artículo 1375 del Código de 1930, *supra*, 31 LPRA sec. 3843 (derogado).
[63] *Polanco v. Cacique Motors*, supra, a la pág. 167; *Domínguez v. Caguas Expressway Motors, Inc.*, 148 DPR 387 (1999); *García Viera v. Ciudad Chevrolet, Inc.*, 110 DPR 158 (1980); *Ferrer Delgado v. General Motors Corp.*, supra; *Berríos v. Courtesy Motors of Puerto Rico*, 91 DPR 441 (1964).
[64] *Polanco v. Cacique Motors*, supra, a la pág. 168; *García Viera v. Ciudad Chevrolet, Inc.*, supra, a la pág. 162.
[65] *Polanco v. Cacique Motors*, supra, a la pág. 168; *Ferrer Delgado v. General Motors Corp.*, supra, a la pág. 249.
[66] *Ferrer Delgado v. General Motors Corp.*, supra, a las págs. 249-250.
[67] Artículo 1213 del Código Civil de 1930, *supra,* 31 LPRA sec. 3391 (derogado).
[68] *Íd.,* Artículo 1217, 31 LPRA sec. 3404 (derogado).

hubiera pactado.[69] Es decir, el dolo es producido por una persona que conoce las consecuencias antijuridicas de sus actos, pero, aun así, emplea un complejo de malas artes para engañar a quien actúa de buena fe, para beneficio propio.[70] Así, pues, puede haber dolo cuando una de las partes contratantes calla alguna circunstancia importante relacionada al objeto del contrato.[71] Por otra parte, cabe resaltar que el dolo no se presume. Sin embargo, ello no significa que el dolo tiene que probarse directamente, puesto que el mismo puede evidenciarse por inferencia o mediante prueba circunstancial.[72]

Existen dos (2) tipos de dolo, el grave, el cual también se ha denominado causante, y el incidental.[73] El dolo grave es aquel que causa y lleva a celebrar el contrato, de modo que, sin él, las partes no hubieran celebrado el contrato.[74] Entiéndase, es aquel que determina el consentimiento. Por ello, el dolo grave produce la nulidad del contrato.[75] Así, pues, decretada la nulidad de un contrato, en el cual medio dolo, las partes deberán restituirse las cosas que fueron materia de este, con sus frutos y el precio de sus intereses.[76] El Tribunal Supremo ha resaltado que, al determinar la presencia de dolo grave, se debe tomar en cuenta la preparación académica de la persona, su condición social y económica, así como las relaciones y el tipo de negocios que ocupa.[77] Lo anterior, porque no siempre el dolo surgirá de un simple hecho, en ocasiones el dolo será el resultado de un cúmulo de actos y circunstancias.[78]

---

[69] Artículo 1213 del Código Civil de 1930, *supra*, 31 LPRA sec. 3391 (derogado). Artículo 1221, 31 LPRA sec. 3408 (derogado).

[70] *Colón v. Promo Motor Imports, Inc.*, 144 DPR 659, 667 (1997).

[71] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 886 (2008).

[72] *Colón v. Promo Motor Imports, Inc.*, supra, a la pág. 669.

[73] *Íd.*

[74] *Bosques v. Echevarría*, 162 DPR 830, 836 (2004); *Colón v. Promo Motor Imports, Inc.*, supra, a la pág. 67.

[75] *Bosques v. Echevarría*, supra, a la pág. 836.

[76] *García Reyes v. Cruz Auto Corp.*, supra, a la pág. 886. Véase, además, Artículo 1255 del Código Civil de 1930, *supra*, 31 LPRA sec. 3514 (derogado).

[77] *Citibank v. Dependable Ins. Co., Inc.*, 121 DPR 503, 519 (1988).

[78] *Acosta & Rodas, Inc. v. PRAICO*, 112 DPR 583, 616 (1982).

Por su parte, el dolo incidental no produce la nulidad del contrato, solo obliga a indemnizar por los daños y perjuicios.[79] Ello, puesto que, en estos casos, existe la voluntad de contratar, pero hay engaño en el modo en el cual se celebra el contrato. Es decir, en ausencia de dolo, el contrato se hubiera celebrado, pero no bajo las mismas condiciones.[80]

Vemos entonces que los efectos de cada tipo de dolo son patentemente distintos. Por una parte, el dolo grave produce la nulidad del contrato, mientras que, en los casos de dolo incidental, el contrato se mantiene y el perjudicado podrá peticionar que se condene a la parte dolosa a la reparación de las pérdidas sufridas y las ganancias dejadas de percibir.[81]

III

En el presente recurso, mediante sus diez (10) señalamientos de error el recurrente nos invita a concluir que el DACo erró al desestimar su querella. En apretada síntesis, plantea que la referida agencia incidió al aplicar de manera incorrecta la Regla 22 del Reglamento de Garantías de Vehículo de Motor,[82] no interpretar adecuadamente el Artículo 1373 del Código Civil de 1930 sobre el saneamiento de los vicios ocultos,[83] y al no considerar el potencial de nulidad de la compraventa por dolo.

Establecido lo anterior, es preciso acentuar que, conforme relatamos previamente, este caso tuvo sus inicios cuando el recurrente presentó una *Querella* en contra de la parte recurrida, de quien había adquirido un vehículo de motor, por razón de unos desperfectos en el sistema de audio y la pantalla digital del referido vehículo. Posteriormente, la aludida querella se enmendó por orden del DACo, para incluir a FirstBank, por ser la institución bancaria

---

[79] *Colón v. Promo Motor Imports, Inc.*, supra, a la pág. 667.
[80] *García Reyes v. Cruz Auto Corp.*, supra, a la pág. 887.
[81] *Colón v. Promo Motor Imports, Inc.*, supra, a la pág. 668.
[82] Reglamento Núm. 7159, *supra*.
[83] 31 LPRA sec. 3841 (derogado).

que financió la compraventa del vehículo en cuestión, mediante un contrato de arrendamiento financiero.

Tras varias incidencias procesales, entre las cuales se encuentra, pero no se limitan, a la notificación de una inspección realizada al vehículo por un perito del DACo, la referida agencia celebró una vista administrativa. En la referida vista, se presentó el testimonio de la esposa del recurrente y del inspector de garantía de la parte recurrida, quien compareció como testigo de esta parte.

Celebrada la vista, el DACo emitió la resolución que nos ocupa, en la cual declaró *No Ha Lugar* la *Querella* presentada por el recurrente. La aludida agencia concluyó en su *Resolución* que la parte aquí recurrida no incurrió en dolo. Por otro lado, indicó que la prueba demostró que el recurrente utilizó el vehículo de forma regular y que los problemas no mermaron el uso de la unidad. De igual forma, razonó que el recurrente debió haber llevado su auto para que le instalaran la pieza que corregía su problema según establecía el "recall" y que, al no hacerlo, no le brindó oportunidad a la parte recurrida para corregir el problema de forma efectiva. A tenor, decretó el cierre y archivo de la *Querella* incoada por el recurrente.

Antes de pasar a discutir los errores relacionados al Reglamento de Garantías de Vehículo y aquellos otros sobre el saneamiento de los vicios ocultos y dolo, conviene mencionar que en su décimo error el recurrente aduce que el DACo erró al valorar la prueba presentada ante su consideración. Más aún, cuando, en suma, no se presentó una transcripción de la prueba oral de los testimonios vertidos durante la vista.

En vista a lo anterior, es preciso reiterar que, al ejercer nuestra función revisora, debemos conceder deferencia a las decisiones de las agencias, debido a su experiencia y conocimiento

especializado en los asuntos que les han sido encomendados.[84] Así, pues, en la medida posible, nos debemos abstener de alterar las determinaciones de hecho realizadas por las agencias.[85] Esto, distinto a las conclusiones de derecho, sobre las cuales tenemos facultad de revisar en todos sus aspectos.[86]

Ahora bien, en virtud de la aludida deferencia, no podemos concluir irreflexivamente que las determinaciones e interpretaciones de la agencia son correctas.[87] Para prevenir el referido automatismo, debemos de evaluar si la decisión se basa en evidencia sustancial que obra en el expediente administrativo.[88] A esos efectos, la parte recurrente deberá demostrar, mediante su recurso de revisión judicial, que existe otra prueba en el expediente que impide concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración.[89] En consecuencia, si la parte afectada no demuestra lo anterior, estaremos impedidos de sustituir el criterio de la agencia.[90] Asimismo, es menester subrayar que, pese a que las conclusiones de derecho son revisables en todos sus aspectos, este foro apelativo debe considerar la experiencia de la agencia en cuanto a los reglamentos y leyes que administra.[91]

Luego de examinar detenidamente el expediente administrativo ante nuestra consideración, así como el recurso de revisión judicial, nos es forzoso concluir que el recurrente no logró establecer que obraba en el expediente otra evidencia que ameritaba resolver el caso de manera distinta. Esto, principalmente debido a que, según expresamos, este no presentó una prueba oral de la vista

---

[84] *Rolón Martínez v. Supte. Policía*, supra, a la pág. 35.
[85] *Íd.*
[86] *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros,* supra.
[87] *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra, a la pág. 754.
[88] *Otero v. Toyota*, supra, a la pág. 727.
[89] *Gutiérrez Vázquez v. Hernández y otros*, supra, a la pág. 244.
[90] *Otero v. Toyota*, supra, a la pág. 728.
[91] *García Reyes v. Cruz Auto Corp.*, supra, a la pág. 894.

administrativa para la consideración de este Tribunal. Es norma harta conocida ante la ausencia de una prueba oral, este foro apelativo no cuenta con los elementos para descartar la apreciación razonada y fundamentada de la prueba que realizó la agencia recurrida.[92] De manera que, nos es forzoso, en este caso, tomar como ciertas y correctas las determinaciones de hecho realizadas por el DACo. A tales efectos, nuestra evaluación en cuanto a la procedencia del resto de los errores esgrimidos por el recurrente debe circunscribirse a las determinaciones de hecho realizadas por la agencia recurrida.

Dicho lo anterior, procederemos a disponer sobre los errores relacionados a la Regla 22 del Reglamento de Garantías de Vehículos de Motor, los cuales discutiremos en conjunto por estar íntimamente relacionados.

En su *primer* señalamiento de error, el recurrente arguye que el DACo incidió al no decretar la nulidad del contrato de compraventa. Sobre este particular expresa, en síntesis, que la Regla 22 del Reglamento de Garantías de Vehículos de Motor aplica en aquellos casos en los cuales el vendedor tuvo oportunidad razonable para reparar uno o más errores, y no pudo corregirlos.[93] Arguye que, en este caso, los defectos del sistema de audio se prologaron sin solución durante la vigencia de la garantía de fábrica, por lo que la aludida regla es de aplicación. A tales efectos, arguye que el DACo ignoró la evidencia testimonial y rechazó la prueba desfilada.

Por otro lado, en su *segundo* señalamiento de error plantea que la referida agencia falló en su interpretación sobre lo que constituye oportunidad razonable para corregir. Esto, puesto a que nuestro Tribunal Supremo ha razonado que esta disposición debe interpretarse liberalmente a favor de consumidor, y dado a que, en

---

[92] Véase *Hernandez Maldonado v. Taco Maker,* 181 DPR 281, 289 (2011).
[93] Reglamento Núm. 7159, *supra.*

este caso, la parte recurrida tuvo múltiples oportunidades para corregir los desperfectos habidos en su vehículo y no pudo remediarlos. Sobre este particular abunda, en su *cuarto* error, que el DACo ignoró que el consumidor perdió la confianza sobre el vendedor, ante su incapacidad de reparar el vehículo. Aduce que los consumidores no están obligados a permitir múltiples intentos de reparación cuando el vendedor ha tenido un sin número de oportunidades razonables y no ha podido corregir el defecto. Así, pues, en su *quint*o error, reitera que el DACo incidió en su aplicación de la Regla 22 del Reglamento de Garantías de Vehículos de Motor[94] puesto a que este no le exige al consumidor otorgar al vendedor una cantidad ilimitada de oportunidades de reparación.

Según expusimos en nuestra previa exposición doctrinal, la Regla 22 del Reglamento Núm. 7159 establece que el DACo puede decretar la resolución de un contrato de compraventa o reducir el precio de venta, en aquellos casos en los cuales el vendedor tuvo oportunidad razonable para reparar uno o más defectos, *pero no quiso o no pudo.*[95]

Sobre lo que constituye oportunidad razonable, aunque no se ha definido propiamente, el propio reglamento de Garantía de Vehículos de Motor indica que se determinará tomando en consideración las circunstancias particulares de cada caso.[96]

Al evaluar las determinaciones de hecho realizadas por el DACo, las cuales debemos presumir que son válidas y correctas, dado a que el recurrente no nos colocó en posición de descartar la apreciación de la prueba que realizó esta agencia, vemos que pese a que es cierto que el recurrente acudió en una multiplicidad de ocasiones a Bella para reparar desperfectos relacionados al sistema

---

[94] Reglamento Núm. 7159, *supra.*
[95] Reglamento de Garantía de Vehículos de Motor, *supra.* (Énfasis nuestro).
[96] *Íd.*

de audio y la pantalla digital del vehículo, no surge que Bella *no quiso o no pudo repararlos,* según exige la aludida Regla 22 para la aplicación de los remedios que ofrece el reglamento. Al contrario, la parte recurrida en cada visita del recurrente atendió sus reclamos e incluso le entregó el vehículo el mismo día.[97] En la única ocasión en la cual la parte recurrida no pudo reparar los desperfectos reclamados por el recurrente fue porque este decidió no llevar el vehículo a Bella para que le instalaran la pieza.[98] Entiéndase que, quien ocasionó que el vendedor no pudiese reparar el defecto sufrido por el vehículo fue el mismo recurrente. En consideración a lo anterior, este Panel coincide que los errores relacionados a la Regla 22 del Reglamento Núm. 7159[99] *no se cometieron.*

En cuanto a los errores relacionados a disposiciones del Código Civil sobre el saneamiento de los vicios ocultos, los cuales atenderemos en conjunto por la correlación habida entre ellos, el recurrente expresa en su *sexto* error que el DACo ignoró la aplicación en el presente caso de la Regla 37 del Reglamento de Garantías de Vehículos de Motor.[100] De manera que, lo privó de los remedios legales disponibles para los casos de vicios ocultos. Igualmente, en su *séptimo* error arguye que el DACo incidió al no aplicar adecuadamente el Artículo 1373 del Código Civil sobre el saneamiento de los vicios ocultos, puesto a que el vendedor está obligado responder por los vicios que hagan la cosa impropia para el uso que la destina o que la disminuya de tal modo que de haberlas conocido el comprador no la habría adquirido. Además, en su o*ctavo* error expresa que el DACO incidió al no resolver el contrato de compraventa habido entre las partes del título, pese a que es uno de

---

[97] Véanse Determinaciones de Hecho Núm. 5 a la 14 de la *Resolución* recurrida, en el Apéndice del recurso, a las págs. 23-24.

[98] Véanse Determinaciones de Hecho Núm. 15 a la 18 de la *Resolución* recurrida, en el Apéndice del recurso, a la pág. 24.

[99] Reglamento de Garantía de Vehículos de Motor, *supra.*

[100] *Íd.*

los remedios que se otorga en los casos de vicios redhibitorios. Insiste que la persistencia de los defectos en el vehículo, a pesar de las múltiples reparaciones, justificaba la resolución del contrato. Por otra parte, en su *tercer* señalamiento de error el recurrente plantea que el DACo falló al no considerar que se interrumpió el término establecido por nuestro ordenamiento jurídico vigente de seis (6) meses para ejercer una acción redhibitoria

En virtud de la Regla 37 del Reglamento Núm. 7159, el consumidor tiene derecho a ejercer acciones de saneamiento por vicios redhibitorios, así como cualquiera otra que le reconozca el Código Civil de Puerto Rico.[101] Esto, puesto a que es deber de todo vendedor responder por tales vicios.[102] Según expusimos anteriormente, se ha razonado que el defecto necesario para activar la acción redhibitoria es aquel que merme el valor de la cosa, no así que imposibilite su uso.[103] En cuanto a las acciones por vicios ocultos, en aquellos casos en los cuales la cosa vendida es un vehículo de motor, nuestro Tribunal Supremo ha razonado que el comprador vendrá obligado a demostrar que al momento de la compraventa el automóvil funcionaba debidamente y, luego, se presentaron defectos que el vendedor *no quiso o no pudo corregir.* [104] Mientras que, el vendedor, quedara exento de responsabilidad si demuestra que el funcionamiento anormal fue causado por lo actos del comprador.[105]

De lo anteriormente expuesto se desprende que, indiscutiblemente, la parte recurrida venía obligada a responder por lo vicios redhibitorios. Esto, pues, pese a que, según se desprende de las determinaciones de hecho, los defectos en el sistema de audio

---

[101] Reglamento de Garantía de Vehículos de Motor, *supra.*
[102] Artículo 1350 del Código Civil de 1930, *supra* (derogado).
[103] *Polanco v. Cacique Motors,* supra, a la pág. 167; *DACo v. Marcelino Mercury*, supra, a la pág. 84.
[104] *Polanco v. Cacique Motors*, supra, a la pág. 168; *Ferrer Delgado v. General Motors Corp.,* supra, a la pág. 249.
[105] *Ferrer Delgado v. General Motors Corp.,* supra, a las págs. 249-250.

y la pantalla digital no imposibilitaron su uso, pero si mermaron el valor de la cosa. No obstante, lo anterior, en estos casos, se requiere que el comprador demuestre que el vendedor no quiso o no pudo corregir los defectos, cosa que el caso de marras no ocurrió, ya que según reseñamos la parte recurrida siempre atendió los reclamos del recurrente. Lo que sí se demostró es que el recurrente, con sus acciones, ocasionó que el defecto reclamado, el 24 de julio de 2023, no pudiese ser reparado por el vendedor. Ello, puesto a que, según adelantamos, se negó a llevar el vehículo para que le instalaran la pieza.

Por otra parte, es preciso señalar que, aunque es cierto que el Código Civil dispone de un plazo legal de seis (6) meses para incoar una acción de saneamiento de vicios redhibitorios y que este comienza a transcurrir desde el momento que cesen las gestiones de inteligencia,[106] contrario a lo que alega el recurrente, lo anterior, en nada interfirió o motivó las conclusiones a las cuales llegó la agencia mediante la resolución que nos ocupa.

Por todo lo antes expuesto, colegimos que los errores relacionados al saneamiento de los vicios ocultos *no se cometieron.*

Finalmente, cabe resaltar que, en su *noveno* señalamiento de error, el recurrente arguye que el DACo incidió al no considerar el potencial de nulidad del contrato de compraventa por dolo.

Es norma harta conocida que el dolo implica que el vendedor con palabras y/o con maquinaciones insidiosas incita al contratante a celebrar un contrato que, sin ellas, no hubiera pactado.[107] En otras palabras, que el vendedor engañó al comprador para su propio beneficio.[108] Nada en el expediente nos invita a concluir que la parte recurrente actuó con dolo al venderle el vehículo de motor al

---

[106] *Polanco v. Cacique Motors*, supra, a la pág. 166; *Ferrer Delgado v. General Motors Corp.,* supra, a la pág. 252; *Casa Jaime Corp. v. Castro*, 89 DPR 702, 704 (1963).
[107] Artículo 1221 del Código Civil de 1930, supra (derogado).
[108] *Colón v. Promo Motor Imports, Inc.*, supra, a la pág. 667.

recurrente. Incluso, de lo que se desprende, entendemos a base de las determinaciones de hecho emitidas, ni tan siquiera se desfiló prueba ante el DACo sobre esta cuestión. De manera que, concluimos que el *noveno* error tampoco fue cometido por el DACo.

En vista de todo lo antes expuesto, nos es forzoso confirmar la resolución recurrida.

IV

Por los fundamentos que anteceden, se *confirma* la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones